IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JAY HANNAH,

                Plaintiff,

v.                                      CIVIL ACTION NO.   2:20-cv-00120

UNITED PARCEL SERVICE, INC.,

                Defendant.

## MEMORANDUM OPINION & ORDER

Pending before the court is Defendant's Motion for Summary Judgment [ECF No. 32]. Plaintiff has responded [ECF No. 35] and Defendant has replied [ECF No. 36]. For the reasons below Defendant's Motion is **GRANTED.**

### I.    Relevant Facts

Plaintiff Jay Hannah began working part-time for Defendant United Parcel Service, INC. ("UPS") in 2004 in Parkersburg, West Virginia. He began working full time as a UPS truck driver in 2008. As a part of his employment, Plaintiff is a union member of IBT Local 175, and he is subject to the Union's Collective Bargaining Agreement.

On December 13, 2017, Plaintiff suffered an injury to his buttocks while at work. [ECF No. 17, at 2]. The following day, Plaintiff met with a healthcare provider who diagnosed him with right hip bursitis and cleared him to work with the following

restrictions for one week: only 1–3 hours of kneeling and 1–3 hours of sitting. [ECF No. 32, Ex. K]. During this time, the seat in Plaintiff's UPS truck was replaced. Plaintiff filed a workers' compensation claim and between December 14 and December 29, 2017, Plaintiff was assigned Temporary Alternate Work, per the terms of the Collective Bargaining Agreement. [ECF No. 1, Ex. A, at 37:1–8]. Plaintiff was assigned to work four hours per day washing trucks to accommodate his restriction of limited sitting time. When his workers' compensation claim was initially denied[1] on December 29, 2017, he was notified that he was no longer eligible for Temporary Alternate Work. [ECF No. 1, Ex. A, at 172:3–7].

Once he was no longer eligible for Temporary Alternate Work, Plaintiff took a Leave of Absence. Plaintiff received a sacroiliac injection in February 2018, and he was eventually cleared to return to work without restriction on March 21, 2018. Plaintiff's injury returned in April of 2018, rendering him unable to perform his job. [ECF No. 17, at 2]. Plaintiff requested that Defendant provide him with a "delivery truck with softer suspension than the usual truck Defendant supplied to its drivers." *Id.* This request was not granted, and Plaintiff once again went on a Leave of Absence.

In September 2018, while on his Leave of Absence, Plaintiff was diagnosed with sacroiliitis and the doctor stated that Plaintiff was unable to perform the functions of position and that his only work restriction was driving the truck. [ECF

---

[1] Plaintiff did ultimately appeal the denial of his workers' compensation claim to the Supreme Court of Appeals of West Virginia which found in his favor that the right hip bursitis was a compensable work-place injury.

No. 32, Ex. P]. His doctor cleared him to return to work so long as he avoided prolonged sitting until November 1, 2018. In October, Plaintiff requested to return to work but to be assigned a "delivery van or pickup truck that has softer suspension." This request was denied because there was not "any available position at UPS at this time for which [Plaintiff was] qualified and capable of performing the essential job functions with or without reasonable accommodation." [ECF No. 32, Ex. R]. Plaintiff's Leave of Absence was extended again in December 2018. [ECF No. 32, Ex. S].

After having a nerve ablation which remedied his pain, Plaintiff returned to work full-time in May 2019 to his previous position as a UPS truck driver. He remains employed in this position.

In July 2020, Plaintiff filed a workers' compensation claim for heat exhaustion. Soon after filing that claim, Plaintiff was disciplined at work for violating Defendant's Grooming Policy which required that a male employee's hair should "not extend below the upper half of the ear, nor below the top of the shirt collar in the back." [ECF No. 17, at 4]. Plaintiff was told that he would serve a five-day suspension for this violation. Plaintiff filed a union grievance, and the suspension was ultimately rescinded. Plaintiff did not serve any of this five-day suspension and it has been removed from his record. [ECF No. 32, Ex. A, at 32:25–33:19].

Plaintiff filed this action alleging five counts. Count I: failure to accommodate a workplace disability in violation of the Americans with Disabilities Act; Count II: Disability Discrimination under the Americans with Disabilities Act; Count III:

Gender Discrimination in violation of the West Virginia Human Rights Act; Count IV: Workers' Compensation Discrimination in violation of West Virginia Code § 23-5A-1; and Count V: Retaliation in Violation of the West Virginia Human Rights Act.

## II.    Discussion

### A.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. A court "may grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). Although the court will view all underlying facts and inferences in the light most

favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256.

### B. Failure to Accommodate under the Americans with Disabilities Act

> [T]o establish a prima facie case against his employer for failure to accommodate under the ADA, the plaintiff must show: (1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations.

*Thomas v. City of Annapolis*, ---F. App'x ---, 2021 U.S. App. LEXIS 7314, *13 (4th Cir. Mar. 12, 2021) (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)). If Plaintiff establishes a prima facie case, Defendant "may avoid liability if it can show as a matter of law that the proposed accommodation "will cause undue hardship in the particular circumstances." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012).

"The term 'reasonable accommodation' means '[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability . . . to perform the essential functions of that position.'" *EEOC v. Womble Carlyle Sandridge & Rice, LLP*, 616 F. App'x 588, 593 (4th Cir. 2015) (quoting 29 C.F.R. § 1630.2(o)(1)(ii)). The ADA provides that "reasonable accommodation" includes "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant

position." *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 414 (4th Cir. 2015) (quoting 42 U.S.C. § 12111(9)(B)).

An accommodation can be reasonable even if it is not the employee's requested accommodation. *See Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415 (4th Cir. 2015) ("An employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested."); *see also Dones v. Brennan*, 147 F. Supp. 3d 364, 369 (D. Md. 2015) ("[A]n employer is not required to provide the employee's preferred accommodation."); *Scott v. Montgomery Cnty. Gov't*, 164 F. Supp 2d. 502, 508–09 (D. Md. 2001) ("The ADA does not require an employer to provide the specific accommodation requested, or even to provide the best accommodation, so long as the accommodation is reasonable.") (quoting *Walter v. United Airlines, Inc.*, 2000 U.S. App. LEXIS 26875, 2000 WL 1587489, at *4 (4th Cir. 2000) (internal alterations and quotation marks omitted)). A temporary leave of absence may, in some circumstances, be a reasonable accommodation. *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589, 595 (S.D. W. Va. 2008). Further, the requirement to provide reasonable accommodation does not require an employer to violate the terms of a collective bargaining agreement. *Doe v. Mylan Farms, Inc.*, No. 1:16CV72, 2017 WL 4584044, at *3 (N.D. W. Va. Oct. 13, 2017). Plaintiff has not produced evidence necessary to satisfy the *prima facie* elements of a failure to accommodate claim.

Plaintiff repeatedly requested reassignment to driving a van or pickup truck with a softer suspension to accommodate his disability which caused him pain when he sat for long periods of time in a standard UPS delivery truck. According to Plaintiff, there were pickups in the fleet available to be driven. Defendant counters that Plaintiff would not have been able to complete his assigned route with one of the requested vehicles. Plaintiff confirmed that this is the case. Assigning Plaintiff to a different route would also have required Defendant to remove another driver from their assignment, violating the terms of the collective bargaining agreement. However, Defendant was never required to provide the specific accommodation requested by Plaintiff. Defendant permitted Plaintiff to take two Leaves of Absence until he was able to return to work. Further Plaintiff never alleges that the terms of his Leave of Absence were unsatisfactory. During this time, Plaintiff was not removed from his role, and when he was medically able to return, he returned to his original role. There is no dispute over the fact that Plaintiff was permitted to take Leaves of Absence and still retain his original role. As a matter of law, Plaintiff has failed to offer evidence that Defendant denied him a reasonable accommodation for the pain he suffered while driving.

### C.  Disability Discrimination under the Americans with Disabilities Act

The Americans with Disabilities Act prohibits a covered employer from discriminating "against a qualified individual on the basis of disability . . . in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). To prove his case, Plaintiff must

show that (1) he has a disability, (2) he is a "qualified individual" for the employment in question, and (3) the defendant took an adverse employment action against him because of his disability. *EEOC v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000). A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions" of his job. 42 U.S.C. § 12111(8). If the plaintiff can prove his prima facie case, the burden of production shifts to the defendant to establish a legitimate, non-discriminatory reason for the termination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Raytheon Co. v Hernandez*, 540 U.S. 44, 50 n.3 (2003) (noting that courts use the *McDonnell Douglas* methodology for ADA claims). Once such a reason is proffered, the burden "reverts to the plaintiff to establish that the employer's non-discriminatory rationale is a pretext for intentional discrimination." *Heiko v. Colombo Sav. Bank*, 434 F.3d 249, 258 (4th Cir. 2006).

The element at issue here is whether Plaintiff suffered an adverse employment action. "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 601 (D. Md. 2018) (quoting *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)). Plaintiff has offered no evidence that he suffered an adverse employment action. Plaintiff was not terminated from his position, has not had his wages or benefits decreased, and to this day retains his job with Defendant. Plaintiff's claim of disability discrimination under the ADA fails as a

matter of law.

### D.  Gender Discrimination under the West Virginia Human Rights Act

The West Virginia Supreme Court of Appeals has held that

> [i]n order to make a prima facie case of employment
> discrimination under the West Virginia Human Rights Act,
> W. Va. Code § 5-11-1 et seq. (1979), the plaintiff must offer
> proof of the following: (1) That the plaintiff is a member of
> a protected class[;] (2) That the employer made an adverse
> decision concerning the plaintiff[;] and] (3) But for the
> plaintiff's protected status, the adverse decision would not
> have been made.

Syl. Pt. 3, *Conaway v. Eastern Associated Coal Corp.*, 358 S.E.2d 423 (W. Va. 1986);

*Higginbotham v. Appalchian Railcar Servs., LLC*, 2021 WL 1146395, *2 (S.D. W. Va.

Mar. 25, 2021). Again, Plaintiff's claim fails due to the lack of an adverse employment

decision.

Plaintiff argues that his five-day suspension for violating Defendant's

grooming policy constitutes gender discrimination because a female employee would

not have been suspended for having hair that touched her collar or covered her ears.

This is an interesting argument, but Plaintiff was never actually suspended. He

received notice of a five-day suspension, but because of his union membership, he did

not serve any of his suspension until the suspension was reviewed. During this review

process, Defendant updated its grooming standards and the suspension was reversed.

In addition, the suspension was removed from Plaintiff's employment record. Plaintiff

was never subject to any consequences of an adverse decision. He continues to work

at UPS and drives the same route he has always been assigned. Plaintiff's claim of

gender discrimination under the West Virginia Human Rights Act fails as a matter of law.

### E. Workers' Compensation Discrimination under West Virginia Code § 23-5A-1

West Virginia Code § 23-5A-1 provides that "[n]o employer shall discriminate in any manner against any of his present or former employees because of such present or former employee's receipt of or attempt to receive benefits under this chapter." The Supreme Court of Appeals of West Virginia has held that

> [i]n order to make a prima facie case of discrimination under W. Va. Code, 23-5A-1, the employee must prove that: (1) an on-the-job injury was sustained; (2) proceedings were instituted under the Workers' Compensation Act, W. Va. Code, 23-1-1, et seq.; and (3) the filing of a workers' compensation claim was a significant factor in the employer's decision to discharge or otherwise discriminate against the employee.

Syl. Pt. 1, *Powell v. Wyo. Cablevision*, 403 S.E.2d (W. Va. 1991). Again, a plaintiff must show that he has been subject to an adverse employment action. *See W. Va. Pattern Jury Instructions* § 308. An adverse employment action under this section includes termination and failure to reinstate to the employee to their previous position. *W. Va. Code* § 23-5A-3.

Here, Plaintiff was never terminated from his position and was re-employed in the same position that he held before he was injured. To the extent that the five-day suspension could be considered discrimination under this section, as discussed above, this suspension never came to pass. This claim fails for lack of any evidence that

Plaintiff suffered any actual adverse impact from filing this workers' compensation claim.

### F.  Retaliation in Violation of the West Virginia Human Rights Act

West Virginia Code § 5-11-9(7)(C) provides that it is unlawful for any employer to "[e]ngage in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under this article or because he or she has filed a complaint . . . ."

> In an action to redress an unlawful retaliatory discharge under the West Virginia Human Rights Act, W.Va. Code, 5-11-1, et seq., as amended, the burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation) (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation.

Syl. Pt. 1, *Brammer v. West Va. Human Rights Comm'n*, 394 S.E.2d 340 (W. Va. 1990). Some courts have held that actual discharge of employment is not necessary if a plaintiff can show an adverse employment action. *Larry v. Marion Cnt'y Coal Co.*, 302 F. Supp. 3d 763, 773–774 (S.D. W. Va. 2018). Regardless of whether a plaintiff must show discharge or merely an adverse employment action, I have already discussed at length that Plaintiff still maintains his job with Defendant and has not been subject to any adverse employment action. This claim also fails.

11

### III.    Conclusion

Defendant's Motion for Summary Judgment [ECF No. 32] is **GRANTED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      June 2, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE